IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TREY GOODMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:14-CV-340 (MTT) |
| ) | |
| CURTIS CARTER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### ORDER

United States Magistrate Judge Thomas Langstaff recommends denying Plaintiff Trey Goodman's motion for default judgment (Doc. 28) and granting Defendant Curtis Carter's motion for summary judgment (Doc. 17). (Doc. 30). The Magistrate Judge recommends denying the default judgment because the Defendant "has not failed to plead or otherwise defend this action." (*Id.* at 3). The Magistrate Judge recommends granting summary judgment because the Plaintiff "failed to sufficiently rebut the Defendant's summary judgment showing regarding the Plaintiff's excessive force claims" pursuant to 42 U.S.C. § 1983. (*Id.* at 16). The Plaintiff has objected to the Recommendation, and the Defendant has responded to this objection. (Docs. 31; 32). The Plaintiff then continued his objection in a reply to the Defendant's response. (Doc. 33). Pursuant to 28 U.S.C. § 636(b)(1), the Court has reviewed the Plaintiff's objection and has made a de novo determination of the portions of the Recommendation to which the Plaintiff objects.

With respect to the Plaintiff's motion for default judgment, the Plaintiff has not objected to the recommendation to deny it.  The Court agrees for the reasons stated in the Recommendation that the motion should be denied and accepts and adopts the findings, conclusions, and recommendations of the Magistrate Judge as to this motion.

The Plaintiff does object to granting summary judgment on his excessive force claims.  These claims are based on two incidents: (1) the Defendant's allegedly choking the Plaintiff while attempting to handcuff him and (2) the Defendant's allegedly pushing the Plaintiff into a wooden beam on a glass partition after he had been handcuffed and shackled.  (Doc. 1 at 4-5).  These two incidents were captured on video and occurred after the Defendant, a lieutenant on the CERT team at Georgia Diagnostic and Classification State Prison, was called because the Plaintiff refused to be cuffed.  (Doc. 17-5 ¶ 3).  The Defendant stated in his affidavit that when he told the Plaintiff "to turn around and cuff up," he again refused.  (*Id.* ¶ 4).  The Defendant then placed the Plaintiff on the floor to cuff him, but his right arm was tucked underneath his body.  (*Id.* ¶ 6).  The parties dispute whether this was intentional resistance.  (*Id.*; Doc. 24 ¶ 7).  The Plaintiff testified in his deposition that the Defendant then choked him.  (Doc. 17-3 at 49:18-50:9).  However, when asked whether there "were any bruises on [his] throat afterwards, the Plaintiff clarified, "No, because I put my chin down.  He ain't get a chance to choke.  He tried to."  (*Id.* at 53:9-12).  The Defendant disputes that he or anyone ever choked the Plaintiff.  (Doc. 17-5 ¶ 3).  This incident occurred in an open dorm next to a crowd of inmates.  (Doc. 17-7).

After the Defendant and the other CERT members were able to cuff the Plaintiff and shackle his feet, the Defendant lifted the Plaintiff off the ground by his waistband.

(Docs. 17-3 at 54:10-20; 17-5 ¶¶ 7, 12).  The parties' testimony conflicts about what happened next.  According to the Defendant, when he began to escort the Plaintiff toward the exit, the Plaintiff "immediately lunged forward and tried to snatch himself away," catching the Defendant off balance.  (Doc. 17-5 ¶ 13).  Then, the "momentum … carried [the Plaintiff] into the glass partition." (*Id.* ¶ 13).  However, according to the Plaintiff, he did not pull away; rather, he resisted the Defendant's pulling his pants up by grabbing his own pants.  (Docs. 17-3 at 54:10-55:16, 57:19-23; 24-1 at 11; 26 at 2).  It was the Defendant who pushed and pulled the Plaintiff and then pushed him into a wooden beam on a glass partition, resulting in a laceration to his head.  (Docs. 17-3 at 57:1-58:18, 59:21-25; 24-1; 26 at 2).  This incident occurred next to the exit of the dorm and away from the crowd of inmates.  (Doc. 17-7).

As to the first incident, the Court agrees for the reasons stated in the Recommendation that summary judgment is appropriate.  Thus, the Court accepts and adopts the findings, conclusions, and recommendations of the Magistrate Judge as to the excessive force claim based on this incident.  However, for the following reasons, the Court disagrees that summary judgment is appropriate as to the excessive force claim based on the second incident.

To establish a claim of excessive force in violation of the Constitution, an inmate must allege that he suffered an injury resulting from a jail official's "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  "The core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 1–2.  Factors considered in this inquiry include the need for the application of force, the

relationship between that need and the amount of force used, the threat reasonably perceived by the official, and any efforts made to temper the severity of a forceful response. *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002).

After reviewing the video of the two incidents, the affidavits, and the Plaintiff's deposition and then considering the four factors, the Magistrate Judge concluded there was no genuine issue of fact whether the Defendant violated the Eighth Amendment. Given the Plaintiff's admitted resistance to the Defendant's control by grabbing his own pants, the Court agrees with the Magistrate Judge that some use of force was warranted. *See Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). However, the Court disagrees that "a reasonable jury could not conclude that the amount of force Defendant … used was not reasonably proportionate to the need for that force." (Doc. 30 at 13). The evidence in this case presents two competing, contradictory versions of what happened. And at the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party—in this case, the Plaintiff—with "all justifiable inferences to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 261 n.2 (1986).[1]

The Defendant argues both that this was an accident and that force was necessary because the Defendant reasonably perceived that the Plaintiff had "lunged forward and tried to snatch himself away from [him]." (Docs. 17-1 at 4, 10; 17-5 ¶ 13; 25 at 2; 32 at 2). He did not push the Plaintiff; rather, the "Plaintiff lost his balance and hit his head on a beam." (Doc. 32 at 2). At the same time, the Defendant argues force was justified because of the extent of the threat to the safety of staff and inmates. (Doc.

---

[1] The Court adopts by reference the complete motion for summary judgment standard articulated in the Recommendation. (Doc. 30 at 3-4).

17-1 at 11). The Defendant stated in his affidavit that the Plaintiff "resisted throughout the entire incident" which "created a threat to the safety of [him] and the other staff members who were present." (*Id.* ¶ 16). Further, according to the Defendant, the fact the incident occurred in "an open dorm heightened the potential risk of danger," and "you never know if the inmate is trying to set up a distraction for a larger resistance or if the other inmates will join in the resistance." (*Id.*).

But in the Plaintiff's version of events, he resisted the Defendant's pulling up his pants by "grabb[ing] the back of [his own] pants." (Docs. 17-3 at 54:10-55:16; 24-1 at 11; 26 at 2). "And then that's when [the Defendant] got mad and start[ed] pushing and pulling." (Doc. 17-3 at 59:15-16). The Plaintiff did not resist by pulling away from the Defendant; rather, "when [the Plaintiff] went to buck," the Defendant pushed and pulled him and then pushed the Plaintiff "head first" into a wooden beam on a glass partition, resulting in a significant laceration to his head. (*Id.* at 57:1-58:18, 59:21-25; Docs. 24-1 at 1-2, 11; 26 at 2). Further, the Defendant applied this force after the Plaintiff's hands were cuffed and his feet shackled and while they were walking towards the exit of the dorm. (Docs. 17-2 ¶ 15; 17-7; 17-5 ¶ 7; 26 at 2). The video shows they were already next to the exit and away from the crowd of inmates when the alleged push occurred.[2] (Doc. 17-7).

The Magistrate Judge concluded that the Plaintiff does not dispute "that he pulled against Defendant Carter's efforts to move him to the exit." (Doc. 30 at 16). It is not clear exactly what the Magistrate Judge is referring to, but the Plaintiff expressly disputed that he pulled away from the Defendant in his response to the summary

---

[2] The Plaintiff argues in his objection that the medical records demonstrating his injuries establish his Eighth Amendment claim. (Doc. 31 at 2-3). This argument lacks merit because the extent of the Plaintiff's injuries is simply one factor the Court considers. *See Hudson*, 503 U.S. at 7.

judgment motion. (Doc. 24 at 2). Further, when asked at his deposition whether he was "pulling away from Officer Carter" while "walking towards the … exit," the Plaintiff said, "No, I never pulled from. I just pull my—adjust my pants, and he got to pushing and pulling." (Doc. 17-3 at 57:19-23). The Plaintiff added that he "grab[bed] the back of [his] pants … when [he] went to buck, and then that's when [the Defendant] went to pushing and pulling [him]." (*Id.* at 56:25-57:11). The Plaintiff also stated it was difficult to keep his balance when the Defendant was pushing and pulling him and that he "caught [himself] and pushed back" when the Plaintiff was going towards the sink. (*Id.* at 57:1-6, 58:3-12). The Plaintiff clarified he "stomp[ed] and push[ed] [his] weight off so [he did not] bust [his] head" on the sink. (*Id.* at 58:3-12). The Defendant then pushed the Plaintiff forward again. (*Id.* at 58:11-12). Therefore, the Plaintiff's testimony that he grabbed his pants and tried to catch himself from hitting the sink contradicts the Defendant's story that the Plaintiff "lunged forward and tried to snatch himself away from [him]." And the Plaintiff's testimony that he had difficulty in keeping his balance and then was pushed headfirst into the beam contradicts the Defendant's story that the Plaintiff "lost his balance and hit his head on the beam."

Thus, the parties' testimony clearly conflicts on the nature and justification for the use of force, and the video does not flatly contradict the Plaintiff's allegations. *See Logan v. Smith*, 439 F. App'x 798, 801 (11th Cir. 2011) ("[T]his Court will accept the video's depiction over the opposing party's account of the facts where the video obviously contradicts that version of the facts. … [But] the record evidence does not flatly contradict [the plaintiff's] allegations and, therefore, his version of the events cannot be discounted—nor the defendants' version credited—at this point in the

litigation."). "[W]e are simply left with different stories told by different litigants." *Id.* at 802 (concluding summary judgment was inappropriate where the video evidence did not flatly contradict the plaintiff's allegations and where the evidence presented "different stories told by different litigants"). And in the Plaintiff's version, the Defendant responded to the Plaintiff's grabbing his pants by pushing the Plaintiff headfirst into a wooden beam on a glass partition, even though he was cuffed and shackled and not pulling away.

Therefore, given the conflicting evidence and viewing this evidence in the light most favorable to the Plaintiff, the Court concludes there is a genuine issue of fact whether the force used, in relation to the need for it, was maliciously and sadistically applied to cause harm. *See Hall v. Bennett*, 447 F. App'x 921, 924 (11th Cir. 2011) (concluding summary judgment was inappropriate where the evidence left the Court "with two competing, contradictory stories of what happened" and criticizing the district court for "improperly weigh[ing] the witnesses' credibility by favoring" the defendant's account over the plaintiff's); *cf. Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (affirming summary judgment on a "close question" and concluding the defendant's open-handed push was not "disproportionate to the need to restore order when dealing with a drunk and boisterous inmate" while officials attended another inmate who had just attempted suicide in the next cell).[3]

---

[3] The Magistrate Judge also concluded that summary judgment is appropriate because the "Plaintiff … presented no evidence beyond his bare assertions to establish that Defendant Carter used force maliciously and sadistically for the very purpose of causing harm." (Doc. 30 at 15). The Court disagrees. The Plaintiff was deposed, provided an affidavit, and pointed to video evidence which together create a genuine issue of fact. Further, "for purposes of summary judgment, there is nothing inherently wrong with 'self-serving testimony,'" and the Court may not disregard it "in determining whether there is a genuine dispute of fact on a material issue in this case." *Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F. App'x 848, 852 (11th Cir. 2012).

The Defendant also contends he is entitled to qualified immunity. (Doc. 17-1 at 14). However, the Eleventh Circuit has stated that "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich*, 280 F.3d at 1301; *see also Dobbins v. Giles*, 451 F. App'x 849, 851 (11th Cir. 2012) ("[W]hen a plaintiff making an excessive force claim 'has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment' demonstrating that the officer used force maliciously and sadistically to cause harm, he has necessarily established the two prongs required to defeat a defense of qualified immunity." (citation omitted)). Accordingly, the Defendant is not entitled to qualified immunity. Thus, for the reasons stated, summary judgment is inappropriate as to this claim.

For the foregoing reasons, the Recommendation is **ADOPTED in part and REJECTED in part**. The Plaintiff's motion for default judgment is **DENIED**. (Doc. 28). The Defendant's motion for summary judgment is **GRANTED in part** as to the excessive force claim based on the Defendant's allegedly choking the Plaintiff, and the motion is **DENIED in part** as to the excessive force claim based on the Defendant's allegedly pushing the Plaintiff into a wooden beam. (Doc. 17).

**SO ORDERED**, this 25th day of March, 2016.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT